UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL AVILA,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>WARDEN SULLIVAN,<br><br>　　　　　Respondent. | No. 1:18-cv-01243-DAD-JLT (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[TWENTY-ONE DAY OBJECTION DEADLINE]** |

Petitioner is currently in state prison serving a sentence of 25 years to life plus 11 years for first degree residential burglary. He filed the instant habeas action challenging the conviction. As discussed below, the Court finds the claims to be without merit and recommends the petition be **DENIED.**

**I.　　PROCEDURAL HISTORY**

On July 9, 2015, a Kern County jury found Petitioner guilty of first degree residential burglary (Cal. Penal Code §§ 460(a); 667.5(c)(21)), possessing a burglary tool (Cal. Penal Code § 466), and delaying a peace officer in performance of his or her duties (Cal. Penal Code § 148(a)(1)). People v. Avila, 2017 WL 3167473, at *1 (Cal. Ct. App. July 26, 2017). The trial court found Petitioner had suffered two prior convictions for serious felonies that constituted strikes under California's Three Strikes law (Cal. Penal Code §§ 667(a), (c)-(j); 1170.12(a)-(e)), and further found Petitioner had served four prior prison terms (Cal. Penal Code § 667.5(b)). Id.

1

The court sentenced him to an aggregate prison term of 25 years to life plus 11 years. Id.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). On July 26, 2017, the Fifth DCA affirmed judgment. Id. Petitioner filed a petition for review in the California Supreme Court, and the petition was denied on October 25, 2017. Id.

On September 13, 2018, Petitioner filed a petition for writ of habeas corpus in this Court. (Doc. 1.) Respondent filed an answer on November 16, 2018. (Doc. 11.) Petitioner did not file a traverse.

## II. FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[1]:

At approximately 9:00 p.m. on February 2, 2015, Kern County Sheriff's Deputy Vollmer was on patrol in the area of Filburn Avenue and Pepper Tree Close in Wasco. He saw a Hispanic male (subsequently identified as Barrios) in dark clothing, sitting on a bicycle near the area of Filburn and the open south end of the Pepper Tree Close cul-de-sac. When Barrios saw Vollmer's patrol vehicle, he started to ride away on his bicycle. Vollmer lost sight of him.

Vollmer noticed a second bicycle lying in a grass area just outside the opening in the wall separating Filburn from Pepper Tree Close. Suspecting possible criminal activity in light of Barrios's appearance and conduct, Vollmer pulled over and stopped. Not seeing anyone in the vicinity, he walked to where he could see into the residential area, which was well lit. The garage door was open in a residence on Pepper Tree Close, and the light was on inside.

As Vollmer approached the garage, he saw the back of a subject inside. Vollmer could see clearly in the garage. The person, who was wearing a gray hooded sweatshirt with the hood down, a white or light-colored hat, and blue jeans, was standing just inside the garage near a cardboard box. Vollmer saw his face from no farther away than five feet and instantly recognized him, from a number of prior contacts during which they had spoken face-to-face, as defendant. [FN 2.] Defendant acted as if he was looking around inside the garage, then he reached down toward the box.

> [FN 2.] Vollmer's most recent contact with defendant was about a month earlier.

Vollmer approached along the passenger side of a vehicle that was parked in the driveway. Defendant noticed him and came out of the garage crouched down, and went between the two vehicles in the driveway. When Vollmer loudly yelled, "Sheriff's Department. You better stop," defendant stood up and looked at Vollmer. Vollmer again had a clear view of his face from a few feet away. There was no doubt in Vollmer's mind concerning defendant's identity. They made eye contact, and

---

[1] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

2

| | |
|---|---|
| 1 | defendant ran south through the opening in the wall, and then west along the grass area on Filburn. Vollmer chased after him. Defendant began throwing three items—Armor All original cleaner, tire cleaner, and Armor All soap—from the front pocket of his sweatshirt. As he ran, he looked back at Vollmer. |

defendant ran south through the opening in the wall, and then west along the grass area on Filburn. Vollmer chased after him. Defendant began throwing three items—Armor All original cleaner, tire cleaner, and Armor All soap—from the front pocket of his sweatshirt. As he ran, he looked back at Vollmer.

Vollmer lost defendant in a residential area one block to the west. Vollmer broadcast defendant's description (Hispanic male, white hat, gray sweatshirt, blue jeans), then went back to retrieve the items defendant had dropped. He then returned to his patrol vehicle. Within minutes, Deputy Davis broadcast that he had seen the subject running near the 1900 block of Broadway, which was one block east of Pepper Tree Close. At first, Davis did not get a good look at the person, who was running away from him and jumping fences between houses. Davis unsuccessfully tried to cut him off. As Davis drove eastbound on 16th Street, he saw a Hispanic male in a gray hooded sweatshirt in his rearview mirror. The person was running toward some apartments. Davis turned around and got a clear look at the subject. It was defendant, whom Davis had seen before.

Upon hearing Davis's broadcast, Vollmer began driving around the area in an attempt to locate defendant. When he saw Davis turn down 16th Street, he followed. Both deputies exited their vehicles in front of an apartment complex on 16th Street. They contacted two subjects—defendant and Barrios—who were standing at the bottom of the apartment complex stairwell. Defendant was wearing a gray hooded sweatshirt and blue jeans, the same outfit Vollmer had seen a few minutes earlier minus the hat. Barrios was straddling the same bicycle he had earlier. Defendant was standing in front of him as they conversed. Despite the fact it was fairly cold, there was sweat dripping off defendant's head and he was breathing heavily. This was no more than 10 minutes after Vollmer saw defendant inside the garage, which was about three blocks away.

Vollmer again yelled, identifying himself and ordering defendant and Barrios to stop. Defendant and Vollmer made eye contact; Vollmer recognized him as the person he had seen in the garage. Defendant and Barrios ran up the stairwell into the apartment complex. They entered the apartment at the top of the stairs and were taken into custody. Davis then took defendant back downstairs and searched him. In defendant's right front pants pocket was what was known as a shaved key. Davis had training and experience in identifying burglary tools, specifically shaved keys. Such keys usually are used for getting into cars and houses, as well as for stealing cars. A shaved key has wear marks, such as brush marks from sandpaper or some sort of sanding tool.

While Davis transported both subjects to the substation, Vollmer contacted Anthony Gomez, a resident of the house in the garage of which defendant had been. Gomez and his parents had been inside the house around 9:00 p.m. that evening when Gomez heard a noise in the garage. A short time later, Gomez went into the garage and was contacted by Vollmer. Vollmer took Gomez to view some items in the grassy area by the cul-de-sac opening. Gomez identified the items as having come from the carwash kit Gomez had in a box inside the garage. Gomez did not know defendant, who did not have permission to be inside the garage or to take the items.

Avila, 2017 WL 3167473, at *1-2.

///

///

3

## III. DISCUSSION

### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### B. Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that

an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C. Review of Petition

Petitioner raises three claims in his petition: 1) He claims defense counsel rendered ineffective assistance by failing to object to improper opinions provided by officers that Petitioner was the burglar in violation of the Sixth and Fourteenth Amendments; 2) He contends that the inclusion of the phrase "a bump key is a burglary tool" directed a verdict against Petitioner in violation of his Sixth and Fourteenth Amendment rights; and 3) The cumulative effect of the errors violated his due process rights.

1. Ineffective Assistance of Counsel

Petitioner first alleges defense counsel rendered ineffective assistance when he failed to object to opinion testimony by officers. He contends that the improper testimony directed a verdict in the prosecution's favor. Petitioner raised this claim on direct appeal. In the last reasoned decision, the Fifth DCA denied the claim as follows:

> On direct examination, Vollmer testified:
>
>> "Q And when you first saw the defendant at those apartments, did you notice anything about him physically that caught your attention?
>>
>> "A You could—as we approached, I mean, you could see the sweat dripping off of his head. And you could tell, just by his chest and stomach movement, that he was breathing heavily.
>>
>> "Q What did that indicate to you?
>>
>> "A *That he was, obviously, the subject that just ran from us and that we were pursuing.*" (Italics added.)
>
> Again on direct examination, Davis testified concerning his training and experience with regard to shaved keys and their uses. He testified that the shaved key he found in defendant's pocket was consistent with the shaved keys he had seen on other occasions, and that he knew of no legitimate purpose for which someone would possess such a key. This ensued:
>
>> "Q Now, based on your training and experience, did you form an opinion in this case as to what the key was that you found in the defendant's pocket?
>>
>> "A Yes.
>>
>> "Q What is that opinion?
>>
>> "A *That is a burglary tool used to break into vehicles.*" (Italics added.)
>
> Defendant did not object at trial to either instance of purportedly improper opinion testimony. Recognizing this bars direct consideration of his claim of error on appeal

6

(e.g., *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 76; *People v. Mickey* (1991) 54 Cal.3d 612, 669), defendant says he received ineffective assistance of counsel. This claim lacks merit.

The burden of proving ineffective assistance of counsel is on the defendant. (*People v. Pope* (1979) 23 Cal.3d 412, 425.) "To secure reversal of a conviction upon the ground of ineffective assistance of counsel under either the state or federal Constitution, a defendant must establish (1) that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings. [Citations.] 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003; see generally *Strickland v. Washington* (1984) 466 U.S. 668, 687–694 (*Strickland*).) "In considering a claim of ineffective assistance of counsel, it is not necessary to determine "'whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies .... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed.'" [Citation.]" (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008.)

Vollmer's challenged testimony constituted lay opinion. "A lay witness may testify to an opinion if it is rationally based on the witness's perception and if it is helpful to a clear understanding of his testimony. [Citation.]" (*People v. Farnam* (2002) 28 Cal.4th 107, 153; see Evid. Code, § 800.) Davis's testimony about the shaved key constituted expert opinion. "The subject matter of such an opinion is limited to 'a subject that is sufficiently beyond common experience that [it] would assist the trier of fact.' [Citation.] 'Expert opinion is not admissible if it consists of inferences and conclusions which can be drawn as easily and intelligently by the trier of fact as by the witness. [Citation.]' [Citation.]" (*People v. Chapple* (2006) 138 Cal.App.4th 540, 546–547; see Evid. Code, § 801.) Neither a lay nor an expert witness may express an opinion on a defendant's guilt (*People v. Vang* (2011) 52 Cal.4th 1038, 1048; *People v. Coffman and Marlow, supra*, 34 Cal.4th at p. 77; *People v. Torres* (1995) 33 Cal.App.4th 37, 46–47) or as to whether a crime has been committed (*People v. Torres, supra*, at pp. 47–48).

Assuming, without deciding, that the challenged testimony was objectionable (compare, e.g., *People v. Frederick* (2006) 142 Cal.App.4th 400, 412 [trial court properly permitted expert witnesses to testify regarding indicia of endless chain schemes, but not whether organization at issue was in fact such a scheme] with *People v. Carter* (1997) 55 Cal.App.4th 1376, 1378 [trial court properly admitted expert opinion testimony that defendant possessed rock cocaine for purposes of sale]) and that this is one of those rare cases in which the failure to object to evidence constitutes deficient performance by counsel (see *People v. Gurule* (2002) 28 Cal.4th 557, 609–610), we find no reasonable probability defendant would have obtained a more favorable result absent counsel's shortcomings. Both officers had prior contacts with defendant and recognized him immediately upon seeing his face. The challenged portion of Vollmer's testimony added little or nothing to the already strong identification of defendant as the perpetrator. [FN 3.] The challenged portion of Davis's testimony was merely cumulative to other, unchallenged testimony concerning the attributes of a shaved key and its lack of a legitimate purpose. (See *People v. Torres, supra*, 33 Cal.App.4th at p. 49.) In addition, jurors were instructed that it was up to them alone to decide what happened, and that they were not required to accept lay or expert opinions as true or correct.

7

> [FN 3.] We recognize that, while in pursuit, Vollmer broadcast defendant's description, but not his name. We also recognize Vollmer and Gomez disagreed concerning whether the stolen items were wet. In our opinion, neither of these circumstances undermines Vollmer's and Davis's identifications of defendant, or calls into question their testimony that they knew him from previous contacts and recognized him on the night in question.
>
> Defendant argues Vollmer's purportedly improper opinion "presupposed and usurped" the special knowledge of the judge concerning how circumstantial evidence should be evaluated by the trier of fact. [FN 4.] Defendant says Davis testified that defendant ran up the staircase; therefore, a reasonable conclusion was that defendant was winded and sweaty from running up the staircase.
>
> > [FN 4.] Jurors were instructed, in part: "[B]efore you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. [¶] If you can draw two or more reasonable conclusions from the circumstantial evidence and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."
>
> Defendant's interpretation of the testimony is not supported by the record. Davis testified that he saw defendant running before defendant reached the bottom of the staircase in the apartment complex, and that after Vollmer told defendant to stop, defendant continued to run up the staircase. Vollmer testified that when he pulled up by the apartment complex, he saw defendant standing with Barrios at the bottom of the stairwell. When Vollmer first saw defendant at the apartments, Vollmer could see sweat dripping off his head and could tell he was breathing heavily by his chest and stomach movement, despite the fact it was fairly cold that night. It was only after these observations that defendant ran up the stairs. In light of this testimony, which was uncontradicted, it would have been unreasonable for jurors to conclude defendant was winded and sweaty from running up the staircase. Accordingly, any error in admitting the challenged evidence did not interfere with the instructions given by the trial court.

Avila, 2017 WL 3167473, at *2-4.

   a. *Legal Standard*

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is

that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

   b. *Analysis of Claim*

The state court reasonably determined that Petitioner suffered no prejudice. Assuming the statements were objectionable, the Court agrees with the state court that there was no reasonable probability the result would have been different had counsel objected. The officer's statement that he concluded Petitioner was the perpetrator because he was sweating and breathing heavily added little to the already strong identification of Petitioner as the perpetrator. Both officers

9

recognized Petitioner upon sight based on previous interactions with him. Vollmer testified that he saw Petitioner's face in the garage from no farther away than five feet and instantly recognized him. (Doc. 12-3 at 86-94, 98-99.) Shortly thereafter when Vollmer ordered Petitioner to stop, they made eye contact from no farther than five feet away; Vollmer testified he had no doubt it was Petitioner. (Id. at 94, 101-102, 106.) Davis testified that he got a clear view of Petitioner as he was running toward the apartments and immediately recognized him based on his prior contacts with him. (Id. at 191-192.) Likewise, Davis's testimony concerning shaved keys was cumulative of other evidence. (Id. at 199-204.) Moreover, the jury was properly instructed that it was obligated to decide what occurred and was free to reject lay and expert opinions. Accordingly, even if counsel had objected to the statements, it is clear it would not have affected the outcome. The state court's decision was not unreasonable and the claim should be rejected.

2. Instructional Error

In his next claim, Petitioner alleges that the inclusion of the phrase, "A bump key is a burglary tool," in the jury instructions directed a verdict against him in violation of his due process rights. Petitioner raised this claim to the state courts on direct appeal. The Fifth DCA rejected the claim as follows:

> With respect to count 3, the trial court instructed:
>
>> "Defendant is charged in count 3 with possession of burglary tools, in violation of Penal Code section 466, a misdemeanor. To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant willfully and unlawfully possessed a bump key; and, two, the defendant had the intent to use the burglary tool to break or enter into a building or vehicle.
>>
>> "*A bump key is a burglary tool.*" (Italics added.) [FN 5.]
>>
>> [FN 5.] The trial court gave this instruction at the conclusion of closing arguments. During the giving of the bulk of the instructions prior to closing arguments, the court gave the same instruction, except with the term "bunk key" instead of "bump key." The written instruction sent into the jury room used the term "bump key." "'It is generally presumed that the jury was guided by the written instructions.' [Citations.] The written version of jury instructions governs any conflict with oral instructions. [Citations.]" (*People v. Rodriguez* (2000) 77 Cal.App.4th 1101, 1112–1113; *see, e.g.*, *People v. Crittenden* (1994) 9 Cal.4th 83, 138.)
>
> Defendant now contends the emphasized portion of the instruction violated his federal constitutional rights to trial by jury and due process. He says (1) insufficient

10

evidence supported the "bump key" portion of the instruction, because the evidence adduced at trial was of a "bunk key"; (2) the emphasized portion of the instruction was erroneous as a matter of law because a shaved key is not the same as or legally interchangeable with a bump key; and (3) the challenged portion of the instruction directed a verdict, thereby amounting to instructional error that requires reversal of the conviction on count 3 and that also prejudicially contributed to the burglary verdict on count 1. [FN 6.]

> [FN 6.] The Attorney General asserts defendant forfeited his claim by failing to object to the instruction at trial. Not so. "A party may not argue on appeal that an instruction correct in law was too general or incomplete, and thus needed clarification, without first requesting such clarification at trial. [Citation.]" (*People v. Hillhouse* (2002) 27 Cal.4th 469, 503.) The whole thrust of defendant's argument, however, is that the instruction is not correct in law and unconstitutionally directed a verdict or at least removed an element of the offense from the jury's consideration. "Instructions regarding the elements of the crime affect the substantial rights of the defendant, thus requiring no objection for appellate review. [Citations.]" (*Ibid.*; see § 1259.)

We turn first to defendant's claim the evidence adduced at trial was of a "bunk key," not a "bump key." The reporter's transcript uses both terms interchangeably, sometimes even in the same paragraph. [FN 7.] We conclude the reporter's transcription of "bunk key" is in error, a finding we are not precluded from making by the presumption that official duty has been regularly performed. (Evid. Code, § 664; see *People v. Harrison* (2005) 35 Cal.4th 208, 226.) Significantly, defense counsel implicitly conceded, in his argument to the jury, that defendant possessed a "bump key." He did not argue the evidence showed a "bunk key" and not a "bump key" as referenced in the jury instruction, but rather that the prosecution failed to prove defendant possessed the item for an improper purpose. Moreover, the reporter's transcript contains several other, more obvious errors. [FN 8.] Under the circumstances, sufficient evidence supported the "bump key" instruction.

> [FN 7.] For instance, the prosecutor is reported as having told jurors: "So, of course, to prove [count 3], must show that the defendant willfully and unlawfully possessed a bunk key, and the defendant had the intent to use the burglary tool to break or enter a building or vehicle. Well, the bump key is a burglary tool."

> [FN 8.] We readily found the following: "I would think it would be highly and probable [highly improbable] for my client to choose to testify."; "I would note that Mr. Avila and I prepared to stipulate ... that he was convicted in 2013 of two counts of 468 [460(a) ], residential burglary."; and "... we're asking the people who are, you know, *em ashed* [enmeshed] in this action and whose personal credibility is on the line."

Defendant next argues the instruction was erroneous as a matter of law, because the shaved key referenced at trial and a bump key are not the same thing. He cites no evidence for this proposition. A law review article cited for the first time on appeal does not suffice to establish error in a jury instruction that was responsive to the uncontradicted evidence actually presented at trial, to wit, that the two items are the same thing and the terms are used interchangeably. Accordingly, we reject this portion of defendant's argument.

Defendant's main contention is that by telling the jury a bump key is a burglary tool, the trial court directed a verdict in contravention of the Sixth and Fourteenth

11

Amendments to the United States Constitution. As the United States Supreme Court has explained, the fundamental right to trial by jury guaranteed by the Sixth Amendment "includes, ... as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.' [Citation.] Thus, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence. [Citations.] [¶] What the factfinder must determine to return a verdict of guilty is prescribed by the Due Process Clause. The prosecution bears the burden of proving all elements of the offense charged [citations], and must persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements [citations]." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 277–278.)

We independently review whether instructions correctly state the law and whether they effectively direct a finding adverse to the defendant by removing an issue from the jury's consideration. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

Section 466 provides, in pertinent part: "Every person having upon him or her in his or her possession a ... bump key ... or other instrument or tool with intent feloniously to break or enter into any building ... or vehicle ... is guilty of a misdemeanor." "[I]n order to sustain a conviction for possession of burglary tools in violation of section 466, the prosecution must establish three elements: (1) possession by the defendant; (2) of tools within the purview of the statute; (3) with the intent to use the tools for the felonious purposes of breaking or entering. [Citation.]" (*People v. Southard* (2007) 152 Cal.App.4th 1079, 1084–1085.)

In light of the express statutory language, a bump key falls within the purview of section 466 as a matter of law. Thus, defendant's jury "merely was instructed on a point of law that was not open to dispute." (*People v. Carrington* (2009) 47 Cal.4th 145, 190.) Jurors were left to decide the factual questions whether the item in issue constituted a bump key, whether defendant possessed the item, and, if so, whether he did so with the requisite intent. There was no error. (See *id*. at pp. 189–190 [not error to instruct, as to firearm use allegation, that " 'firearm includes a Smith and Wesson .357 magnum revolver' " where evidence showed weapon used was Smith and Wesson .357 magnum revolver; jury was instructed on point of law not open to dispute and was left to decide factual question whether defendant used Smith and Wesson .357 magnum revolver in commission of crimes]; *People v. Brown* (1988) 46 Cal.3d 432, 443–444 [not error to instruct, as to peace-officer-killing special circumstance, that Garden Grove police officers are peace officers, where evidence showed victim was Garden Grove police officer; jury was merely instructed on point of statutory law not open to dispute, and was left to determine all elements of special circumstance, including whether victim was Garden Grove police officer]; *People v. Moore* (1997) 59 Cal.App.4th 168, 179–187 [not error to instruct, as to charge of conspiring to misappropriate public monies with public officer, that specific water district constituted "district" for purposes of offense where it was so denominated in Water Code; jury was left to determine all elements of charge, including whether alleged coconspirator was officer of district]; *People v. Dimitrov* (1995) 33 Cal.App.4th 18, 25–26 [where statute defined "destructive device" to include any bomb, not error to instruct, in prosecution for possession of destructive device, that pipe bomb was destructive device; instruction merely conveyed applicable statutory definition of "destructive device" and did not tell jury subject device was pipe bomb]; *People v. Runnion* (1994) 30 Cal.App.4th 852, 855–857 [not error to instruct, regarding firearm use enhancement, that " 'word "firearm" includes handgun' "; instruction merely told jury that legal definition of firearm included handgun, and left jury to determine whether item at issue in case was handgun].)

> *People v. Figueroa* (1986) 41 Cal.3d 714, on which defendant relies, is not controlling. In that case, the defendants were charged with the sale of unqualified securities under the Corporations Code. (*People v. Figueroa, supra*, at p. 718.) The trial court instructed that certain instruments constituted "securities" as a matter of law. The California Supreme Court held this amounted to an unconstitutional directed verdict, since, although the statute defining a "security" contained a list of instruments coming within the definition, case authority adhered to the principle that substance governed over form. Thus, it was not a foregone conclusion that the instrument in question constituted a "security" under the statute, as resolution of that point depended on questions of fact that should have been submitted to the jury. (*Id*. at pp. 734, 741; see *id*. at p. 741 (conc. opn. of Reynoso, J.).) Similarly, in *People v. Flood* (1998) 18 Cal.4th 470, 477, 482, which involved a prosecution for evading a pursuing peace officer resulting in serious bodily injury or death, the California Supreme Court held the trial court improperly removed an element of the offense from the jury's consideration by instructing that the specific officers involved in the pursuit were peace officers. In the present case, by contrast, the trial court did not tell jurors defendant possessed a bump key or even that the item before them constituted such a device. Rather, "it merely instructed pursuant to the unquestionable and clear terms of the relevant statute[ ]" that a bump key is a burglary tool (*People v. Brown, supra*, 46 Cal.3d at p. 444, fn. 6), an issue "conclusively resolved" by the language of section 466 itself (*People v. Moore, supra*, 59 Cal.App.4th at p. 187).

Avila, 2017 WL 3167473, at *4-6.

    *a.  Analysis of Claim*

It is well-settled that federal habeas relief is not available to state prisoners challenging state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997) ("alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings).

Respondent correctly argues that Petitioner fails to present a federal claim, since Petitioner is challenging the application and interpretation of state law. The state court determined that the trial court did not improperly remove an element of the offense from the jury's consideration. Rather, it found that the trial court merely instructed on the definition set forth in the relevant state statute, Cal. Penal Code § 466, to wit, that a bump key is a burglary tool. Since the state court determined that the challenged instruction was a correct statement of the law, Petitioner's challenge does not give rise to a federal question cognizable on federal habeas review. Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal

13

court sitting in habeas corpus"). Thus, the claim is not cognizable on federal habeas and should be rejected.

Even if the Court finds the claim cognizable, it is without merit. To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle, 502 U.S. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. See Estelle, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)); Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988); see, e.g., Middleton v. McNeil, 541 U.S. 433, 434–35 (2004) (per curiam) (no reasonable likelihood that jury misled by single contrary instruction on imperfect self-defense defining "imminent peril" where three other instructions correctly stated the law).

In addition, a habeas petitioner is not entitled to relief unless the instructional error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice." Id. (citation omitted); see Calderon v. Coleman, 525 U.S. 141, 146–47 (1998).

Petitioner's claim is meritless. The instruction did not remove an element of the offense from the jury's consideration. As noted by the appellate court, a "bump key" was expressly included in Cal. Penal Code § 466. Thus, the jurors were instructed on a point of law not open to dispute, and were left the question of whether the item at issue was in fact a bump key. Petitioner fails to establish that the state court's determination was contrary to or an unreasonable

application of Supreme Court authority. The claim should be denied.

3. Cumulative Error

In his final claim for relief, Petitioner alleges that the cumulative effect of the errors deprived him of due process. Petitioner also raised this claim on direct appeal to the Fifth DCA, which denied the claim in the last reasoned decision as follows:

> Defendant contends his constitutional rights were violated by the cumulative effect of the errors in this case. We have assumed only one error—that trial counsel's failure to object to certain opinion testimony constituted deficient performance—and found it did not prejudice defendant. His contention fails. (See *People v. Tully* (2012) 54 Cal.4th 952, 1061; *People v. Richie* (1994) 28 Cal.App.4th 1347, 1364, fn. 6.)

Avila, WL 3167473, at *6.

"Multiple errors, even if harmless individually, may entitle a petitioner to habeas relief if their cumulative effect prejudiced the defendant." Ceja v. Stewart, 97 F. 3d 1246, 1254 (9th Cir. 1996) (citing Mak v. Blodgett, 970 F.2d 614, 622 (9th Cir. 1992)); see also Karis v. Calderon, 283 F.3d 1117, 1132 (9th Cir. 2002). However, the Ninth Circuit has also recognized that where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation. See Rup v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996). In this case, no errors occurred, and hence, there can be no cumulative error. Even if errors occurred, a reasonable factfinder could have found that the cumulative effect of the alleged errors did not prejudice Petitioner.

## IV. RECOMMENDATION

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten court days (plus three days if served by

mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **January 9, 2019**     **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE